UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 25-CR-10318-PBS |
| GUILHERME FERNANDES-TAVARES | ) ) | |
| Defendant | ) ) ) | |

## **<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The government respectfully requests that the Court sentence the Defendant to 48 months

of imprisonment followed by 24 months of supervised release.  Based on the factors set forth in

18 U.S.C. § 3553(a), this is an appropriate sentence in this case.

FACTUAL OVERVIEW

The Defendant a citizen/national of Brazil and does not have lawful status to be present

in the United States.  Accordingly, he does not have and has never had the federal firearms

license required to engage in the business of selling firearms.  Nevertheless, across ten dates

between January and May 2024, the Defendant sold eleven firearms to cooperating witnesses in

exchange for cash.  Law enforcement also intercepted a package intended for the Defendant that

contained an additional firearm, magazines, and ammunition.

In December 2023, the Defendant offered to sell two pistols, but later reported that these

had been sold to someone else.  The cooperating witnesses were able to first purchase a firearm

from the Defendant on January 23, 2024 and continued to meet with him until May 7, 2024:

- <u>January 23, 2024</u>—the Defendant met with the cooperating witnesses and sold a
  pistol for $1,400.  During the meeting, the Defendant indicated that he had an
  additional five firearms coming from Florida.

- <u>February 5, 2024</u>—the Defendant sold a pistol for $1,400.

- <u>February 12, 2024</u>—the Defendant sold a pistol, magazine, and ammunition for $950.

- <u>February 22, 2024</u>—the Defendant sold a pistol, two magazines, and ammunition for $1,600. During this meeting, the Defendant indicated that an additional pistol was being shipped to him from Florida that he needed to sell.

- <u>February 28, 2024</u>—the Defendant sold a pistol for $1,450. During the meeting, the Defendant stated that the firearm that was being shipped to him from Florida was not delivered and had been returned. Postal agents, however, had intercepted that package and found that it contained a pistol, three magazines and ammunition. A picture of that package is pasted below:



- <u>March 8, 2024</u>—The Defendant sold two pistols for $2,900. Initially, the cooperating witnesses were only planning to purchase one firearm, but the

2

Defendant arrived with an extra pistol, so they arranged to meet again later that day to make the purchase of the second pistol.

- <u>March 27, 2024</u>—the Defendant sold a pistol with a magazine that could hold 29 rounds for $1,800. Pictures of this firearm and the magazine are pasted below:





- <u>April 12, 2024</u>—the Defendant sold a pistol for $1,900.

- <u>April 20, 2024</u>—the Defendant sold another pistol for $2,000. During the sale, the Defendant indicated he was traveling to New Jersey to pick up additional pistols and could sell them for $1,600.

3

- <u>May 7, 2024</u>—the Defendant sold a pistol, magazines, and ammunition for $1,900. The serial number on this firearm was obliterated.  When asked about the serial number, the Defendant told the cooperating witnesses that he had a source of supply who purchased the firearms from gun stores, but this person required that the Defendant scratch off the serial number and provide proof of it.  A picture of this firearm showing the obliterated serial number and a screenshot showing the Defendant pointing out the obliteration are pasted below:





4

GUIDELINES CALCULATION

As set forth in the PSR, the government agrees that the total offense level is 25, which results, based on the Defendant's Criminal History Category of I, in a Guidelines Sentencing Range ("GSR") of 57-60 months.  PSR at ¶¶ 28, 55, and ECF No. 43, par. 3.  Because the Defendant is a prohibited person and the offense involved a semiautomatic firearm with a large capacity magazine, the base offense level is 20.  USSG § 2K2.1(a)(7).  The offense involved between eight and twenty-four firearms and also involved a firearm with an obliterated serial number, resulting in an eight-level total increase.  USSG §§ 2K2.1(b)(1)(B) and (b)(4)(B)(i). The prompt acceptance of responsibility results in a three-level reduction.  USSG § 3E1.1.

SIMILAR CASES

This case arose out of an investigation into a number of individuals possessing/selling firearms in Eastern Massachusetts.  To date, 18 individuals have been charged; thirteen have been sentenced.  They are ordered below from longest to shortest sentence received:

- **Vanderson Rocha Oliveira**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Rocha Oliveira was sentenced to 36 months' imprisonment for selling 11 firearms across seven months (plus an additional 3 that were intercepted by authorities in the mail).  The firearms included pistols, rifles, and shotguns and included 6 large capacity magazines.  One firearm was reported as having been stolen.  Rocha Oliveira had a Criminal History Category II.  *See* Docket No. 25-CR-40013-MRG, ECF No. 63.

- **Alason Ferreira-Peixoto**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Ferreira-Peixoto was sentenced to 35 months of imprisonment and 24 months of supervised release for selling 12 firearms

across 7 dates between June and August 2024.  The firearms included pistols and rifles and included 9 large capacity magazines.  One firearm was reported as having been stolen.  *See* Docket No. 25-CR-10190-AK, ECF No. 43.

- **Joao Vitor Dos Santos Goncalves Pimenta**—pled guilty to engaging in the business of dealing in firearms without a license.  Pimenta was sentenced to 27 months of incarceration for selling 14 firearms, including large capacity magazines.  One of the firearms had been reported as having been stolen.

- **Israel Dos Santos**—pled guilty to engaging in the business of dealing in firearms without a license.  Dos Santos was sentenced to 24 months for selling 9 firearms across 6 dates.  The firearms were mostly pistols and one shotgun and included two large capacity magazines.  One firearm had an obliterated serial number.  Dos Santos had spent approximately one year in ICE custody before coming into the Court's custody that the Court believed would not otherwise be credited for the sentence.  *See* Docket No. 25-CR-10278-BEM, ECF No. 28.

- **Riquelme Henrique De Aguiar Ferreira**— pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  De Aguiar Ferreira was sentenced to 24 months of incarceration followed by 24 months of supervised release for his involvement in the sale of 10 firearms.  *See* Docket No. 25-cr-10261-WGY, ECF No. 35.

- **Lucas Moreira DePaiva**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Moreira DePaiva was sentenced to 18 months of incarceration and 24 months of supervised release for selling 15 firearms

across 10 dates between February and September 2024.  *See* Docket No. 25-CR-10134-LTS, ECF No. 48.

- **Lucas Nascimento-Silva**— pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Nascimento-Silva sentenced to approximately 17.5 months and 24 months of supervised release for selling 12 firearms across four dates, including 4 large capacity magazines.  *See* Docket No. 25-cr-10194-AK, ECF No. 55.

- **Marcos Silva**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Silva was sentenced to 18 months of incarceration and 24 months of supervised release for serving as a source of supply for 9 firearms from Florida, including 5 large capacity magazines.  *See* Docket No. 25-CR-40012-MRG, ECF No. 59.

- **Victor Eduardo Santos De Souza**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  De Souza was sentenced to 14 months for selling two pistols across two dates.  One of the pistols was accompanied by a large capacity magazine.  *See* Docket No. 25-CR-10266-RGS, ECF No. 50.

- **Rafaell Martins Ferreira**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  Martins Ferreira was sentenced to approximately 13 months of incarceration and 24 months of supervised release for selling 2 firearms across 2 dates, including 1 large capacity magazine, and offering to sell others.  *See* Docket No. 25-CR-40010-MRG, ECF No. 59.

- **Floriano DeSouza**—pled guilty to conspiracy to engage in the business of dealing in firearms.  DeSouza was sentenced to a term of imprisonment of 12 months and 1 day,

followed by 24 months of supervised release.  DeSouza's involvement included attempting to collect money on behalf of the conspiracy for firearms that were seized by law enforcement.  *See* Docket No. 24-CR-10372-BEM, ECF No. 48.

- **Gideoni De Oliveira Moutinho**—pled guilty to engaging in the business of dealing in firearms without a license and conspiracy to do the same.  De Oliveira Moutinho was sentenced to 12 months and 1 day, followed by 24 months of supervised release for selling 7 firearms across 6 dates between January and August 2024.  *See* Docket No. 25-CR-10135-LTS, ECF No. 50.

- **Kessi Fermino Sales**—pled guilty to being an alien in possession of a firearm and was sentenced to time served (approximately 3.5 months), followed by 36 months of supervised release.  *See* Docket No. 25-CR-10192-AK, ECF No. 24.

## BASIS FOR RECOMMENDATION

In considering all of the factors of 18 U.S.C. § 3353(a), 48 months of incarceration is an appropriate sentence in this case.  The crime here poses a risk to the safety of the public.  Despite not having a license to sell firearms, the Defendant repeatedly was able to procure and sell firearms to cooperating witnesses.  Across ten dates between January and May 2024, he sold eleven firearms.  An additional firearm was intercepted in the mail, and the Defendant had offered to sell to the CWs at least two additional firearms.  In conversation, the Defendant indicated he had access to at least two out of state suppliers.  Selling firearms without a license is not a technical/administrative violation—it is appropriately a felony because of the nature of the items sold.  Firearms are regulated because they can be—and unfortunately are—used to kill or seriously hurt people.  The presence of a firearm can make quarrels, robberies, domestic disputes, and other conflicts deadlier.  And, the circulation or availability of illegal firearms

among high-risk networks presents a threat to the security and well-being of urban neighborhoods.[1]

The sales included a pistol with a large capacity magazine.  A firearm with a larger capacity is able to shoot more rounds before reloading.  *See* Louis Klarevas, Andrew Connor, and David Hemenway, *The Effect of Large-Capacity Magazine Bans on High-Fatality Mass Shootings, 1990-2017*,  Am. J. Public Health, 2019 Dec.; 10912): 1754-1761, *available at:* https://pmc.ncbi.nlm.nih.gov/articles/PMC6836798/ (finding mass shootings involving large capacity magazines (defined as more than 10 rounds) resulted in 62% higher mean average death toll and that incidence of high-fatality mass shootings in states that did not ban large capacity magazines were double those that did ban them).

In this case, the Defendant had access to and facilitated a black market of firearms: firearms that were sold without any paperwork, without any background checks, without any accountability.  While the firearms specifically outlined here were obtained by witnesses working with law enforcement and therefore no longer pose a risk to the public, the Defendant has demonstrated that he was able to obtain, deliver, and was willing to sell a significant quantity of firearms for money repeatedly.  He had access to multiple sources of supply and, in conversation, indicated that he sold firearms to others.  Also, he admitted that he was involved in obliterating a serial number of a firearm.  This action to protect a straw purchaser and interfere with the investigation of potential future crimes is concerning.  In sum, the Defendant participated in and encouraged this larger black market where law enforcement often does not recover the firearms until it is too late.

---

[1] David M. Hureau & Anthony A. Braga, *The Trade in Tools: The Market for Illicit Guns in High-Risk Networks*, CRIMINOLOGY, volume 56 issue 3, (July 18, 2018), available at: https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187.

While the GSR calls for a higher sentence,48 months is a sufficient, but not greater than necessary, sentence in this case.  The government recognizes that the Defendant promptly accepted responsibility for his offense, enabling the government to direct its resources to other investigations and cases).  In addition, the government expects that following this sentence, the Defendant will be removed to his native Brazil.  Therefore, the requested imprisonment sentence adequately punishes the Defendant and provides appropriate general and specific deterrence.

In addition, the government requests a 24-month term of supervised release, with Probation's suggested special conditions requiring that the Defendant leave the United States if ordered removed and not return without obtaining the prior permission of the Secretary of the Department of Homeland Security and that he use his true name.  While USSG § 5D1.1(c) provides that the "court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment," the notes to that section state that the "court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case."  A term of supervised release is appropriate here because the Defendant already has demonstrated that the existing immigration and even criminal laws are insufficient to deter him from violating them.  The term and special condition proposed here would provide an additional disincentive for the Defendant to engage in future violations.

CONCLUSION

For the foregoing reasons and based on the factors set forth in 18 U.S.C. § 3553(a), the government requests that the Court impose a sentence of 48 months' imprisonment, no fine

(because it appears that the Defendant is unable to pay such a fine), and 24 months of supervised

release with above-mentioned special conditions.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ John J. Reynolds III*
John J. Reynolds III, BBO# 672295
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3354
john.reynolds2@usdoj.gov

Dated:  March 26, 2026

Certificate of Service

I hereby certify that this document will be sent via ECF to the registered participants.

*/s/ John J. Reynolds III*
John J. Reynolds III
Assistant United States Attorney

11